UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4766

DONOVAN J. MCDONALD, a/k/a
Diamond,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Dennis W. Shedd, District Judge.
(CR-97-13-DWS)

Submitted: March 24, 1998

Decided: August 3, 1998

Before WIDENER, MICHAEL, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Langdon D. Long, Assistant Federal Public Defender, Columbia,
South Carolina, for Appellant. J. Rene Josey, United States Attorney,
Marshall Prince, Assistant United States Attorney, Christopher W.
Seybolt, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donovan J. McDonald seeks review of his jury convictions for using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c) (West Supp. 1997), and possession of a firearm by a convicted felon, in violation of 18 U.S.C.A. § 922(g) (West Supp. 1997).

McDonald's convictions stem from a drug transaction whereby he provided crack cocaine to Tabatha McCleod who, in turn, gave part of the crack cocaine to Sonja Byers. Thereafter, McDonald called Byers demanding payment for the crack cocaine. After informing him that she did not have the money, McDonald drove to Byers' residence, along with McCleod and McDonald's girlfriend, Crystal Moore. While Byers, her common law husband Anthony Rodney, and her two children were attempting to hide, McDonald fired two shots through the front window of Byers' home.

Following the shooting the police recorded McDonald apologizing to Rodney. Thereafter McDonald admitted to the FBI that he fired the gun that night. The Government then subpoenaed Byers to appear before the grand jury. Byers' testimony recounted how she sold drugs obtained from McCleod and that she argued with McDonald regarding the drug money she owed him just before he arrived and fired gun shots at her home. She said that McCleod had told her that McDonald goes to peoples' homes and shoots them. Byers testified that she started cooperating with the police after the shooting and paid McCleod the money she owed her. After the payment, Byers testified that McDonald called and apologized to Rodney for the shooting. After Byers testified before the grand jury she was accidentally killed by Rodney in an unrelated matter making her unavailable to testify at McDonald's trial. At trial, Rodney, McCleod, and Moore testified that McDonald fired the gun at Byers' home that night. The Government

2

also sought to introduce Byers' grand jury testimony. Over defense counsel's objection, the trial court admitted the testimony pursuant to Fed. R. Evid. 804(b)(5).

On appeal, McDonald contends that the admission of Byers' grand jury testimony under the residual hearsay exception of Fed. R. Evid. 804(b)(5), violated his Sixth Amendment rights of confrontation. Finding no reversible error we affirm.

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Despite its absolute language, the Confrontation Clause "permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial."

United States v. McHan, 101 F.3d 1027, 1036-37 (4th Cir. 1996) (quoting Maryland v. Craig, 497 U.S. 836, 844, 847-48 (1990)), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3826 (U.S. June 16, 1997) (No. 96-8994). Under the two-part test articulated by the Supreme Court in Ohio v. Roberts, 448 U.S. 56, 65-66 (1980), before a declarant's hearsay testimony may be admitted, the Confrontation Clause requires the Government to show "(1) that the use of the hearsay is necessary because the declarant is unavailable and (2) that the hearsay bears `indicia of reliability' sufficient to enable the factfinder to evaluate the truth of the hearsay." McHan, 101 F.3d at 1037. For hearsay statements to be admitted under Fed. R. Evid. 804(b)(5), a showing of "particularized guarantees" of their trustworthiness must be made. See Roberts, 448 U.S. at 66; see also McHan, 101 F.3d at 1037. This determination is to be made from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. See Idaho v. Wright, 497 U.S. 805, 819-20 (1990).

McDonald does not challenge the finding of unavailability, but does assert that the grand jury testimony does not have sufficient guarantees of trustworthiness. He suggests that the absence of an agreement of immunity between Byers and the Government should decrease the level of reliability. The record does not show that Byers

3

sought to minimize her own involvement in the drug activities or that her statements were self-serving. In fact the record reveals that Byers admitted her involvement with McDonald which implicated her as a co-conspirator. McDonald further contends that Byers' testimony was not reliable because she was compelled to testify before the grand jury. While it is true that she was subpoenaed, Byers willingly testified before the grand jury without invoking her Fifth Amendment right against self-incrimination or without the benefit of a plea agreement.

Byers' statements were made under oath, with a contemporaneous transcript, and Byers knew that she was subject to prosecution for perjury if she lied before the grand jury. Furthermore, the statements that she made as to her involvement in drug trafficking were against her penal interests. These factors suggest that the testimony is reliable. See United States v. Clark, 2 F.3d 81, 85 (4th Cir. 1993). Byers was not subject to cross-examination during the grand jury proceedings, but the grand jurors were free to question her. The nature of the grand jury testimony thus provides some indicia of trustworthiness. See McHan, 101 F.3d at 1038. Under these circumstances, we find that the district court's finding regarding trustworthiness was not clearly erroneous. Id. (stating standard of review).

In any event, Confrontation Clause violations are subject to review under the harmless beyond a reasonable doubt standard. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). We find that even if the district court erred in admitting Byers' testimony, the error was harmless beyond a reasonable doubt. First, at trial the Government established that McDonald possessed and used a gun by shooting into Byers' home through the eyewitness testimony of Rodney, McLeod, and Moore. Second, an FBI agent testified that McDonald admitted that he went to Byers' home and shot two rounds, one up in the air and one in the ground. Third, both Rodney and McCleod corroborated Byers' testimony showing that the shooting was caused by the failure of Byers and Rodney to pay McCleod the money owed for drugs supplied. Finally, the Government introduced an audio taped-conversation in which McDonald apologized to Rodney following the shooting. Thus, another witness or multiple witnesses testified to the same facts that Byers did.

4

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5